**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

LIONEL L. EDWARDS                                                                      PLAINTIFF

v.                                              3:08CV00036-WRW

AMERICAN RAILCAR INDUSTRIES, INC.                                  DEFENDANT

<u>ORDER</u>

Pending is Defendant's Motion for Summary Judgment (Doc. No. 50). Plaintiff has

responded[1] and Defendant has replied.[2] For the reasons set out below, Defendant's motion is

GRANTED.

**II.      BACKGROUND**

Defendant, American Railcar Industries ("ARI"), is a provider of railcars, railcar

components, railcar maintenance services, and fleet management services.[3] The railcars are

manufactured and assembled in Paragould and Marmaduke, Arkansas.[4] Plaintiff, Mr. Lionel

Edwards, an African-American, who worked at Defendant's Paragould location as a welder from

July 6, 2006, to November 18, 2006, when his employment was terminated.[5] Plaintiff brought

this action under Title VII of the Civil Rights Act of 1964,[6] alleging that he was terminated from

employment because of his race.[7] Defendant asserts that Plaintiff was discharged for threatening

---

[1]Doc. No. 57.

[2]Doc. No. 60.

[3]Doc. No. 52.

[4]*Id.*

[5]Doc. No. 58.

[6]42 U.S.C. § 2000e, *et seq.*

[7]Doc. No. 2.

and intimidating behavior toward another employee, Mr. David Christensen, during working

hours on November 17, 2006.[8] Specifically, Defendant claims that Plaintiff threatened Mr.

Christensen's life when Plaintiff said "[g]ive me my fucking money!  I'll kill you!"[9] Plaintiff

admits that he and Mr. Christensen had a conversation at work about money found on the floor,

but Plaintiff denies that he ever threatened or intimidated Mr. Christensen.[10]

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[11] The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[12]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should only be granted when the movant has established a right to the

judgment beyond controversy.[13] Nevertheless, summary judgment promotes judicial economy by

preventing trial when no genuine issue of fact remains.[14] I must view the facts in the light most

---

[8]Doc. No. 52.

[9]*Id.*

[10]Doc. No. 58.

[11]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[12]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[13]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[14]*Id.* at 728.

favorable to the party opposing the motion.[15] The Eighth Circuit has also set out the burden of

the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[16]

Only disputes over facts that may affect the outcome of the suit under governing law will

properly preclude the entry of summary judgment.[17]

## III.    DISCUSSION

Plaintiff asserts that his termination was race discrimination in violation of Title VII.

Because Plaintiff's claims are based on indirect evidence, his claims must be analyzed under the

burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[18] Under the *McDonnell*

*Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination.[19] Once the

plaintiff meets this initial threshold, a presumption arises that the employer "unlawfully

---

[15]*Id.* at 727-28.

[16]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[17]*Anderson*, 477 U.S. at 248.

[18]411 U.S. 792 (1973).

[19]*Id.*

discriminated against the employee."[20] The burden of production then shifts to the employer, who must articulate some legitimate, nondiscriminatory reason for the employment decision.[21]

The determination that a defendant has met its burden of production cannot be accomplished by assessing the credibility of the reason given by the defendant for its decision;[22] therefore, once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[23]   However, at all times in this analysis, the ultimate burden of production remains with the plaintiff.[24] Once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reasons for [the employment decision was] in fact pretext,"[25] or that the proffered reason for the employer's action was not true.[26]

In order to establish a *prima facie* case of racially disparate treatment, Plaintiff must prove (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he was terminated; and (4) that the employer did not take such action against non-members of the protected class.[27]

---

[20]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[21]*McDonnell Douglas*, 411 U.S. at 802.

[22]*Hicks,* 509 U.S. at 509.

[23]*Id.* at 507.

[24]*Id.*

[25]*McDonnell Douglas*, 411 U.S. at 804.

[26]*Hicks*, 509 U.S. at 508; *see also Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

[27]*LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 693 (8th Cir. 2001).

It is undisputed that Plaintiff was a member of a protected class -- he is African-American, that Plaintiff was qualified for his position, and that Plaintiff was terminated from employment.[28] Under the fourth prong of the test, it appears Plaintiff has failed to show he was treated differently than another employee of a different race.

However, even assuming Plaintiff has established a *prima facie* case, Defendant has stated a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant points to the November 17, 2006, incident involving Plaintiff and Mr. Christensen.[29]  Defendant asserts that Plaintiff "was accused of threatening another employee's life . . . confirmed through investigation and interviews with several witnesses . . ." and that Plaintiff's termination was "not a pretext for discrimination; it was a requirement to maintain the safety and well-being of ARI's employees."[30] In support, Defendant provided the affidavit of Mr. Dean Inman, the Senior Human Resource Manager with ARI.[31] After interviewing witnesses and conducting an investigation, Mr. Inman concluded that Plaintiff had threatened Mr. Christensen's life.[32] As a result, Mr. Inman stated that the discharge was based on a clear violation of ARI's Plant Rule Number Six.[33]

 In an effort to rebut this assertion and establish that Defendant's legitimate, nondiscriminatory reason is pretext, Plaintiff asserts that he "was not treated the same as the white

---

[28]Defendant concedes that Plaintiff has met his burden under the first three prongs of the *McDonnell Douglas* analysis. See Doc. No. 52.

[29]Doc. No. 52.

[30]*Id.*

[31]Doc. No. 52 (Exhibit "A")

[32]*Id.*

[33]*Id.*  A copy of ARI's Plant Rules is attached to Mr. Inman's deposition.  Rule Six states it is prohibited conduct to "threaten, intimidate, coerce, interfere, or create dissention among other employees."

co-worker involved in the incident" because Plaintiff was terminated four days before Mr.

Christensen, a white employee.[34] Plaintiff fails to give examples of other employees similarly

situated to Plaintiff who were not terminated for violating plant rules. Both Plaintiff and Mr.

Christensen were timely fired by Defendant because of the November 17, 2008, altercation.[35] The

difference of four days between terminations does not amount to racially disparate treatment. In

addition, Plaintiff alleges that "ARI had a tendency to evaluate African-American employees

more stringently than Caucasian employees and a tendency to discharge black employees at a

higher rate than white employees."[36] Without any evidentiary support or explanation, these claims

are nothing more than self-serving accusations of discrimination.

Based on the record, Plaintiff has not met his burden to show that Defendant's reason for

Plaintiff's termination was pretext or that Defendant's proffered reason was not true.

Accordingly, Plaintiff's race discrimination claim under Title VII must be dismissed.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion for

Summary Judgment (Doc. No. 50) is GRANTED.

IT IS SO ORDERED this 6th day of January, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[34]Doc. No. 58.

[35]Mr. Inman stated that "[a]fter all interviews were conducted Malissa Reed discharged Lionel Edwards for threatening and intimidating David Christensen, including the threat to kill David Christensen. Malissa Reed discharged David Christensen for committing theft of Lionel Edwards' money." Doc. No. 52 (Exhibit "A").

[36]Doc. No. 58.